UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IN RE:

HOMEMAKERS REAL ESTATE, LLC,

Debtor.

CASE No. 6:25-bk-02685-GER
Chapter 11

**SUPPLEMENTAL PLEADING IN SUPPORT OF MOTION TO DISMISS BANKRUPTCY CASE FOR LACK OF CORPORATE AUTHORITY**

Creditors and Movants, PEDIXON LLC and ZPD, LLC (collectively "Movants"), by and through counsel, hereby files this Supplemental Pleading in Support of Motion to Dismiss Bankruptcy Case for Lack of Corporate Authority (the "Motion"), and in support of the Motion, respectfully states:

In its Order, the Court asks who is the beneficiary under the Tiered Trust and controls the beneficiary's rights under the Tiered Trust? Homemaker's remains the beneficiary. However, by assigning his entire transferable interest in Homemakers, Mr. Johnson is no longer the sole member of Homemakers. The Trust as administered by the Trustee is the sole member with the complete control of Homemakers. See Sec. 605.04073(1); Olmstead v. FTC, 44 So.3d 76, 81 (Fla. 2010). Further, in Florida, there is no limitation on the Trustee acting on behalf of a beneficial interest in the Tiered Trust. Sec. 689.071(2)(b), Fla. Stats.[1] As a result, the Trustee controls all of the Debtor's rights under the Tiered Trust

The preponderance of the evidence before this Court supports that Mr. Johnson has no further rights with respect to Homemakers. The Debtor admits that Mr. Johnson signed the assignment of his interests. The assignment itself is not ambiguous and it is clear that all of Mr.

[1] "Beneficiary" means any person or entity having a beneficial interest in a land trust. A trustee may be a beneficiary of the land trust for which such trustee serves as trustee."

Johnson's right, title, and interest in all of the interests in the Debtor were assigned. The Debtor also admits that the interests in the Debtor were not a part of the original collateral package,[2] the assignment occurred after the loan was made and the Tiered Trust was established, and there is no documentation reflecting that the loan was amended to include the interests in Homemakers to be a part of the collateral package.

The fact that there is no documentation amending the Loan Agreement to add the Homemakers interests to the collateral package is fatal to the Debtor's claim. In order to amend the loan to change the collateral package, section 18.1 of the Loan Agreement requires that "No alteration of or amendment to this agreement shall be effective unless given in writing and signed by the party of parties sought to be charged or bound by the alteration or amendment." A change in the collateral securing the loan requires such a written amendment.

Further, the lack of a written pledge agreement is fatal to the Debtor's claim for another reason. The only decision relied on by the Debtor is In re Windham Power Lifts Inc., 91 B.R. 595 (Bankr. M.D. Fla, 1988), which the Debtor asserts supports treating the assignment of the interest in the Debtor as a collateral assignment. Windham does not apply to this case. In Windham, the SBA entered into a pledge agreement with the owners of the debtor and held a blank endorsement of stock to serve as the original collateral of the loan. There was a default and the court held that the pledge and blank endorsement were not an absolute assignment under Alabama law because the lender had to foreclose on its interest under the pledge agreement and loan documents. Here, there is no pledge agreement, there is no blank endorsement, and there is no loan agreement

[2] The Debtor cannot even provide an explanation as to why the assignment was made. It just claims it was a "fraud" or "trick," with no supporting evidence. This argument was dropped at the hearing once the Debtor realized it did not help its cause.

limiting when the assignment can be exercised. In our case, the Assignment speaks for itself, it is a complete and total assignment of Mr. Johnson's interests.

The evidence supports that the Movants and Mr. Johnson entered into a separate agreement. The Movants accepted the interest in the Debtor to forbear on the collections of Mr. Johnson's debt under his related guaranty. In further support, Movants attach the declaration of Ken Dixon as Exhibit "A" (the "**Dixon Declaration**"). In the Dixon Declaration, Mr. Dixon confirms the existence of a separate agreement between Mr. Johnson and the Movants, which included a total assignment of Mr. Johnson's interests.

To the extent Mr. Johnson is seeking to be awarded ownership of the Debtor through this bankruptcy case, as addressed at the hearing, the Court does not have jurisdiction over this dispute. See In re Toledo, 170 F.3d 1340, 1344-45 (11th Cir. 1999) (defining the categories of a bankruptcy court's jurisdiction). Even if the Court determines it does have jurisdiction, it should abstain from making a determination of ownership of the Debtor under 28 U.S.C. section 1334(c)(1). The non-exclusive factors utilized for determining whether permissive abstention is appropriate, include:

(1) the effect or lack thereof on the efficient administration of the estate if a court recommends abstention;

(2) the extent to which state law issues predominate over bankruptcy issues;

(3) the difficulty or unsettled nature of the applicable law;

(4) the presence of a related proceeding commenced in state court or other nonbankruptcy court;

(5) the jurisdictional basis, if any, other than 28 U.S.C.A. § 1334;

(6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

(7) the substance rather than form of an asserted "core" proceeding;

(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

(9) the burden of the bankruptcy court's docket;

(10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

(11) the existence of a right to a jury trial;

(12) the presence in the proceeding of nondebtor parties;

(13) any other unusual or significant factors;

(14) the court's duty to resolve matters properly before it;

(15) the economical use of judicial resources;

(16) potential prejudice to involuntarily removed parties;

(17) the possibility of inconsistent results; and

(18) any expertise of the court where the action originated.

See Matter of Chicago, Milwaukee, St. Paul & Pacific R. Co., 6 F.3d 1184, 1189 (7th Cir. 1993) (citing In re Eastport Associates, 935 F.2d 1071, 1075-76 (9th Cir. 1991)); Antioch Co. Litigation Trust v. Hardman, 438 B.R. 598, 609-10 (S.D. Ohio 2010); In re Blankenship, 408 B.R. 854, 861 (Bankr. N.D. Ala. 2009); In re Tucson Estates, Inc., 912 F.2d 1162, 1166-67 (9th Cir. 1990) (quoting In re Republic Reader's Service, Inc., 81 B.R. 422, 429 (Bankr. S.D. Tex. 1987)); In re DeMert & Dougherty, Inc., 271 B.R. 821 (Bankr. N.D. Ill. 2001); In re Ahearn, 318 B.R. 638 (Bankr. E.D. Va. 2003); In re Gulf Coast Lift Truck Co., Inc., 319 B.R. 20 (Bankr. M.D. Fla. 2004); In re Richardson, 319 B.R. 724 (S.D. Fla. 2005); Orion Refining Corp. v. Fluor Enterprises, Inc., 319 B.R. 480 (E.D. La. 2004) (rejected by, In re Guerrero, 2013 WL 6834642 (Bankr. S.D. Tex. 2013)).

Here, the overwhelming weight of the factors are in favor of the Court abstaining. The dispute relates to two non-debtors claiming ownership of certain property. Until that dispute is determined, the Court cannot efficiently administer the bankruptcy case because the creditors will not know who to negotiate with and several motions for relief from stay are pending. The litigation over ownership will take time and require discovery. The issues involve state law rights to ownership and the parties have jury rights. There is no question of federal law or other basis for federal jurisdiction other than 28 U.S.C Sec. 1334 (and the Court's jurisdiction in that case is loose). Mr. Johnson is engaging in forum shopping by bringing what is an ownership dispute before the bankruptcy court in order to control the rents and not pay the mortgages, real estate taxes and other charges related to the Debtor's properties – even though he agreed to pay those amounts in the Loan Agreement. The non-debtor ownership dispute between Mr. Johnson and the Trust is not a core proceeding. 28 U.S.C. Sec. 157(b)(2). And, under these circumstances, this Court determining the ownership issue is not an economical use of the Court's resources.

In the end, the only way to properly protect all of the parties' interests[3] is for this Court to require the determination of ownership and corporate control to be decided first by a state court (or by an agreement of the parties), before a bankruptcy case can be properly filed. See In re Florida Men's Medical Clinic, LLC, 2014 WL 3973161 * 1 (Bankr. M.D. Fla 2014) ("The Court agrees that the state court first must resolve this ownership and corporate control dispute before either party can file a bankruptcy case.")[4]

[3] This includes the creditors. They should not be subject to the automatic stay while there is a protracted ownership dispute. If the parties' see value in the creditors being paid to save the units, they can address that issue outside of bankruptcy court.

[4] It should be noted that PEDIXON and ZPD have entered into multiple agreements to try and work out this debt issue. Mr. Johnson, however, did not pay the creditors as required under the Loan Agreement, despite receiving $750,000 in further financing. He also did not sell the individual units to repay the Loan as agreed to and the rents were not sufficient for the debt service. At the hearing, Debtor's counsel admitted Mr. Johnson does not have the funds to back the Debtor's reorganization and the Debtor is unlikely to find financing to address the debt load. Thus, it appears,

Respectfully, the Motion should be granted.

DATED: June 24, 2025.

*_/s/ James A. Timko_*
James A. Timko, Esq.
Florida Bar No. 0088858
**DEAN, MEAD, EGERTON, BLOODWORTH, CAPOUANO & BOZARTH, P.A.**
420 S. Orange Avenue, Suite 700
Orlando, Florida 32801
Telephone: 407-841-1200
Facsimile : 407-423-1831
Email: jtimko@deanmead.com
***Counsel for Movants***

under Mr. Johnson's ownership, there is little likelihood of a reorganization. The Debtor may claim they have a new advisor, but Mr. Johnson has had advisors throughout this process. <u>See</u> <u>Dixon Declaration Para. 6</u>.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on all parties listed below by ECF notification on this 24th day of June, 2025:

*/s/ James A. Timko*
JAMES A. TIMKO, ESQ.

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IN RE:

HOMEMAKERS REAL ESTATE, LLC,

Debtor.

CASE No. 6:25-bk-02685-GER
Chapter 11

**DECLARATION OF KENNETH DIXON IN SUPPORT OF MOTION TO DISMISS BANKRUPTCY CASE FOR LACK OF CORPORATE AUTHORITY**

I, KENNETH DIXON, declare as follows:

1. I am the Managing Member of PEDIXON, LLC ("PEDIXON") and ZPD, LLC ("ZPD") and its corporate representative for the matters addressed in this Declaration.

2. I am over 18 years of age and I am competent to make this Declaration. I am authorized to make this Declaration on behalf of PEDIXON and ZPD and based on my personal knowledge and the business records of PEDIXON and ZPD, including all of the exhibits attached to this Declaration.

3. I am familiar with the business records which PEDIXON and ZPD regularly create and maintain. The business records attached hereto are true and accurate copies; were made by, or from information transmitted by, a person with knowledge of the facts contained in the business records made at or near the time of the acts and events appearing on them; made or compiled as part of the regular practice of PEDIXON and ZPD; and kept in the regular course of Plaintiff's regularly conducted business activities. The documents attached hereto all constitute business records of PEDIXON and/or ZPD.

4. Horton Johnson and Homemakers Real Estate, LLC ("Homemakers") are the guarantors of several loan accommodations made by PEDIXON and ZPD to Tiered Capital, Inc.,

EXHIBIT
tabbies
A

its shareholders and their affiliates, including Homemakers Real Estate, LLC and Horton ("Woody") Johnson (collectively, "Tiered") made from January 2022 through October 2023 (collectively, the "Loan").

5. In 2022, at the request of Ken Jones, the Chief Financial Officer of Tiered (the "CFO"), I began to attend meetings with Frank Amodeo ("Amodeo") at his place of residence located at 1311 Hoffner Ave, Orlando FL 32809.

6. For the first few months, the CFO was present at these meetings. Amodeo was introduced to me as the designated representative and consultant of Tiered, and specifically, Homemakers and Johnson.

7. Johnson was present for at least two of the meetings.

8. Johnson's legal counsel, Baylor Johnson, was present at one of the meetings.

9. After several months, PEDIXON's and ZPD's legal counsel, Alison Pitkanen, generally accompanied me to these meetings.

10. During these meetings, Amodeo orchestrated and negotiated the loan accommodations between PEDIXON, ZPD, and Tiered.

11. In December 2023, the Loan was in default, and the principal amount due was approximately $10,625,000. At this time, I instructed my legal counsel to deliver a default notice to Tiered.

12. On January 7, 2024, I attended a meeting with Frank Amodeo to discuss alternative solutions to foreclosure and legal action against Johnson and Homemakers. At this meeting, Mr. Amodeo suggested that Mr. Johnson would be willing to relinquish all interest in Homemakers to obtain a forbearance of legal action under and enforcement of Mr. Johnson's personal guaranty. Since the Assignment was not merely collateral, and it was something new being offered, I agreed

to forbear. The parties agreed that the Assignment would be a total assignment of the interests with no return to Johnson.

13. On January 9, 2024, I instructed my legal counsel to meet with Amodeo and Johnson to formalize the total assignment from Johnson. On that same date, Johnson executed the Assignment and in exchange therefor, PEDIXON LLC agreed to a six (6) month forbearance of the Loan. A true and correct copy of the Assignment is attached hereto as Exhibit "A."

14. I decided that the interests in Homemakers would be held in the Trust because it was a total assignment and the Trust would own Homemakers and own the beneficial interest in the Tiered Trust for the Trustee to administer to work towards paying off the Loan.

15. The Trustee has the authority to control the entity and holds the beneficiary interest of Homemakers in the Tiered Trust.

16. On or about January 24, 2025, I instructed my counsel to send another default notice to Johnson, among others. A true and correct copy of the default notice is attached hereto as Exhibit "B". In the default notice the assignment of the interests in Homemakers to obtain a forbearance was mentioned. Mr. Johnson never responded to contest the assignment of Homemakers to the Trust.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Kenneth Dixon

**Assignment of Membership Units**

I, Horton S. Johnson, as the sole owner and holder of all of the issued and outstanding membership units of Homemaker Real Estate, LLC, and in consideration of the loan accommodations made by PEDIXON, LLC, a Florida limited liability company, do now assign the following unto Crescent Sound, Ltd., as Trustee of the Tiered Land Trust u/t/d 9/13/2023: all of my right, title and interest in and to all of the issued and outstanding membership units of Homemakers Real Estate, LLC, a Florida limited liability company.

I have executed this assignment in Orlando, Florida on this 9th day of January 2024.

*Horton S. Johnson*
*Manager of*
*Homemakers Real Estate, LLC*

STATE OF FLORIDA
COUNTY OF Orange

THE FOREGOING INSTRUMENT WAS sworn to (or affirmed) and subscribed before me by means of ✓ physical presence or __ online notarization on January 9, 2024, by Horton S. Johnson.

Notary Public, State of Florida
Name: Janelle Morea
(Please print or type)

Commission Number: HH077342
Commission Expires: 1/5/2025

Janelle Morea
Notary Public
State of Florida
Comm# HH077342
Expires 1/5/2025

Notary: Check one of the following:
___ Personally known OR
✓ Produced Identification (if this box is checked, fill in blank below).
Type of Identification Produced: License

HSJ

EXHIBIT
A

**Marisa Godek**

**From:** Alison Pitkanen <alisonpitkanen@gmail.com>
**Sent:** Friday, January 24, 2025 3:56 PM
**To:** Ken Dixon
**Subject:** Fw: PEDIXON loan to Tiered Capital, Inc., et al - Acceleration Notice
**Attachments:** CC Delinq. Crescent Sound Ltd 12.17.24.pdf; Dixon - Notice of Application of Account Proceeds (Loan XXX1214) (08.27.24).pdf

---

**From:** Alison Pitkanen
**Sent:** Friday, January 24, 2025 3:55 PM
**To:** Marty Flynn; Woody Johnson; Marty Flynn
**Subject:** PEDIXON loan to Tiered Capital, Inc., et al - Acceleration Notice

Marty C. Flynn, Jr. & Tracy Hester Flynn
14255 Saint Georges Hill Drive
martyf@sherwoodconstruction.net
mcflynn@me.com

Delivered via email and regular mail

Horton S. Johnson
2523 Kissam Court
Belle Isle, FL 32809
wjohnsonbbf@gmail.com

Delivered via email and regular mail

Yaniv Amar
3475 Mystic Pointe Drive, #10
Aventura FL 33180

Delivered via regular mail

January 24, 2025

RE: PEDIXON LLC and ZPD LLC (collectively, the "Lender") loan to Tiered Capital, Inc., Sherwood Construction et. al. (collectively referred to as "Tiered") and more particularly consolidated in September 2023 and subsequesntly modified in October 2023 (all loans, both separately and consolidated, are individually and collectively referred to as the "Loan")

EXHIBIT
tabbies
B

Gentlemen,

I wanted to reach out with an update regarding this Loan while I am still able to do so.

PEDIXON LLC has accelerated the interest rate under the Loan, effective February 1, 2024.

The outstanding principal balance of the Loa is $8,150,000.
The total amount of accrued unpaid interest is $1,552,376.
The total payoff of the Loan is currently $9,702,376.

I have identified below all of the guarantors and obligors under the Loan.

**Opportunity to Cure.**

My records reflect that default notification was provided in January 2024, and again, in June 2024. Since February 1, 2024, the defaults have continued to accumulate. This correspondence should also serve to provide you with a formal opportunity to cure the defaults under the Loan. The Lender provides you with fifteen days from the date hereof to do so.

As you may recall, in January 2024, Mr. Johnson relinquished control of the membership units in Homemakers Real Estate, LLC; and in exchange therefor, the Lender did not pursue legal action against him personally at the time. It is my understanding that no other steps have been taken to cure any of the defaults since January 2024.

**Defaults.**

There are numerous monetary and non-monetary defaults under the loan. I want to bring your attention to the following most significant defaults:

- Certificate of Deposit. In August 2024, the Lender received notice that Sherwood Construction Inc. allowed First State Bank to seize a significant piece of collateral represented by a One Million Dollar certificate of deposit. The First State Bank correspondence detailing the seizure is attached for reference. This collateral has not been replaced or replenished.

  The Lender has requested that Mr. Flynn (on behalf of 650 85TH LLC) transfer the real property located in Marathon Florida unto the Tiered Land Trust. A good-faith gesture such as this would have shown a willingness to cooperate; but the property was never transferred.

- Association Dues. Crescent Sound Ltd., as Trustee of the Tiered Land Trust, recently received notification from Keystone Management Group requesting payment of delinquent association dues. It is my understanding that payments continue to be delinquent. Attached is the detailed accounting of amounts due.

- Maturity. All Loans, except for the October 2023 Flynn Substitution Loan ($750,000), matured in 2024. The entire unpaid principal balances of the matured loans, including interest and fees, have been due and payable.

Note: The referenced defaults are in addition to numerous other defaults under the Loan.

-

**Conclusion.**

If you have any interest in resolving this in an amicable manner, please let me know.

I will not be involved in any legal action to foreclose upon or seize assets and properties, personal or otherwise. I have advised the Lender to procure separate legal counsel to enforce its rights and remedies under the Loan; and it is my understanding that it has done so. Notwithstanding, the Lender remains open to resolving this amicably with you.

I urge you to consult with legal counsel as soon as possible before this escalates even further.

**Obligors & Guarantors.** Here is a list of obligors and guarantors under the Loan.

Horton S. Johnson, individually
Martin C. Flynn, Jr., individually
Tracy Hester Flynn, individually
Tiered Capital, Inc., a Florida corporation
Sherwood Construction, Inc.
Horton S. Johnson Revocable Trust dated August 3, 2012
MTF Holdings, LLC, a Florida limited liability company
WM Holdings LLC, a Florida limited liability company
65 85TH ST LLC, a Florida limited liability company
Florida Space Coast Resorts, Inc., a Florida corporation
Canaveral Crossroads, LLC
A Marine, Inc., a Florida corporation
Cape Crossing Vacation Rentals, LLC, a Florida limited liability company
Holly Bluff Marina, Inc,, a Florida corporation
Recycled Group of South Carolina, LLC, a South Carolina limited liability company
Canaveral Crossroads, LLC

If you have any questions, please feel free to contact me to discuss. I am happy to answer questions for as long as I can. Once litigation counsel steps in, I will have to defer you to them.

Thank you,
Alison

Alison Pitkanen, Esquire
1980 N. Atlantic Ave, Suite 230-328
Cocoa Beach FL 32931
Cell (407) 449-0037

IMPORTANT: This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination or copy of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone, and delete the original message.