UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IN RE:

HOMEMAKERS REAL ESTATE, LLC,

CASE No. 6:25-bk-02685-GER
Chapter 11

Debtor.

---

**OMNIBUS RESPONSE TO MOTION TO VACATE OR DISMISSING CASE
(DOC. NO. 88 AND DOC. NO. 89)**

Creditors, PEDIXON LLC and ZPD, LLC (collectively "Respondents"), by and through counsel, hereby object to the Motions of Horton Johnson to Vacate Order Dismissing Case Under Rules of Civil Procedure 60(b)(1) and 60(d)(3) (Doc. No. 88) (the "First Motion to Vacate") and to Vacate Order Dismissing Case Pursuant to Rule of Civil Procedure Rule 60(b)(3) (Doc. No. 89) (the "Second Motion to Vacate"), and respectfully states:

**THE MOTIONS PROVIDE NO RELIEF AND ARE MOOT**

Mr. Johnson who was fully aware of the dismissal proceedings in this Bankruptcy Case and even participated through Court call,[1] seeks to vacate the Order dismissing this case. After the Motions were filed, the Court entered an Order for Relief in the involuntary bankruptcy proceeding of the above captioned debtor and provided the parties with 14-days to reach a resolution regarding corporate authority or the Court will appoint a trustee.

Shortly thereafter, on May 26, 2026, the Court entered its Order Scheduling Hearing "to determine if the Motions should be denied given that an Order for relief has been entered in the Involuntary Case."

---

[1] See Ex. A, Pg. 125:19-Pg. 126:3.

6456547.v1

The Motions are moot. "A case is moot when it no longer presents a live controversy with respect to which the Court can provide meaningful relief." <u>Soliman v. U.S. ex. Rel. Ins.</u>, 296 F.3d 1237, 1242 (11th Cir. 2002). The relief granted was the dismissal of this bankruptcy case. Now, a bankruptcy case is pending. Reinstating this bankruptcy case and having two bankruptcy cases pending for one entity provides no relief, is nonsensical, and does nothing to benefit any party-in-interest or creditor. Procedurally, vacating the Dismissal Order presents a quandary as to how to reinstate a case that was dismissed nearly one (1) year ago when another case for the same entity is still pending. After its dismissal, the creditors and parties in interest all acted and conducted business as if the bankruptcy were not in place. Reinstating a chapter 11 bankruptcy case could potentially create confusion, legal claims and administrative issues that are not warranted or fair to anyone.

In addition, all the issues raised in the Motions are based on allegations that, if they are true, were known or should have been known at the time of the first bankruptcy filing. The issue in question in this case was the effect of an unequivocal written assignment of Johnson's membership interests to a trust on his corporate authority to file a bankruptcy case. Both the purported debtor, Homemakers Real Estate, LLC ("Homemakers"), and Johnson had the opportunity to conduct discovery and an evidentiary hearing on this matter and both decided against it. In fact, Homemakers agreed that the Court did not need to conduct an evidentiary hearing and discovery was not necessary and that the Court could rely on the documents attached to Homemakers Response to the Motion to Dismiss when making its decision.[2] The Motions should be seen for what they are, another attempt of Johnson to litigate his alleged rights in Homemakers through impermissible motion practice, rather than pursuing his pending claims

---

[2] The documents included the Assignment, Land Trust Agreement and certain loan documents attached to Homemakers' response to Respondents' Motion to Dismiss.

between two non-debtors in state court. The Eleventh Circuit has held that if a Rule 60(b) motion is filed to obtain an adjudication of a state court claim in the District Court there must be an independent jurisdictional basis. Padilla v. Smith, 53 F. 4th 1303, 1317-18 (11th Cir 2022). No such basis is asserted in the Motions.[3]

### THERE IS NO BASIS TO VACATE THE DISMISSAL ORDER UNDER RULE 60

#### The Issues Presented Underlying the Dismissal Order Were Limited in Scope

Before addressing the arguments reflected in the Motions, providing a brief summary of the proceeding is appropriate. The issue raised in the Motion to Dismiss was whether Johnson had the requisite corporate authority to file a bankruptcy case on behalf of Homemakers. Attached to that Motion was an assignment of Johnson's sole membership interest to the Land Trust.

After Homemakers informed the Court it did not need to conduct an evidentiary hearing, the Court required the parties to provide supplemental briefing. The Court determined that Johnson did not have corporate authority to commence this case.

As stated in the Dismissal Order, the existence of the assignment of Johnson's membership interest in Homemakers and the existence of the Land Trust was not in dispute.

> Movant and Debtors agree that prior to the Petition Date, Mr. Johnson, assigned all of his right, title and interest in 100% of Debtor's membership interests (the "Membership Units") to the Land Trust. The parties also agree that Crescent Sound Ltd., was the trustee of the Land Trust on the Petition Date.

Dismissal Order, Pg. 2 (emphasis added).

No discovery was conducted by Homemakers or Johnson. Based on the Land Trust Agreement, Johnson is not named as a beneficiary in the Land Trust. There is no dispute that the

---

[3] This particularly true now that a Trustee is to be appointed. Main Street has already obtained relief from stay and the secured creditors, let alone unsecured creditors, will likely not be paid in full. There will also be no distribution to equity. The absolute priority rule also applies. Quite simply, there is nothing of value for equity holders to fight over in this case and it is a waste of the Court's resources and time.

6456547.v1

Land Trust documents were <u>not</u> amended to include Johnson as a beneficiary or to include the membership interests in Homemakers as collateral.

Johnson was fully aware of the proceedings, but did not take any action on his own to protect his interests. As reflected in the Motion to Name Johnsons as a Vexatious Litigant (Doc. No. 184 in the involuntary bankruptcy case), when the Court dismissed this case, Johnson filed a flurry of motions and pleadings, participated in, or filed two additional bankruptcy cases. Several of these filings, if not most, were attempts to relitigate the Court's ruling on the Motion to Dismiss. His conduct continues to this day.

Not surprisingly, the First and Second Motions to Vacate lack merit and attempt to assert claims that existed well before the bankruptcy case was filed and Homemakers and Johnson failed to assert or that they would have discovered had they conducted discovery, conducted an evidentiary proceeding and cross examined witnesses. Their failures should not result in the vacating of this Court's Order.

**<u>Rule 60 Motions are Disfavored</u>**

Once a matter is decided, Courts are wary of granting motion under Rule 60 and as discussed below, the burdens on the movant to succeed on a Rule 60 motion is high. "The purpose of a Rule 60(b) motion is to allow a court to correct obvious error or injustice but it is not intended to be a substitute for appeal." <u>United States v. Battle</u>, 272 F. Supp. 2d 1354, 1364 (N.D. Ga. 2003). "The desirability for order and predictability in the judicial process speaks for caution in the reopening of judgments." <u>Griffin v. Swim-Tech Corp.</u>, 722 F.2d 677, 680 (11th Cir. 1984). As presented below, Rule 60 is not available to parties who failed to conduct discovery, did not present evidence or arguments, or slept on their rights.

**Rule 60(b)(1) Does not Apply**

Under Rule 60(b)(1) a Court may vacate its Order if the Court made an erroneous application of the law of the law to the facts before it. See In re Mulig, 494 B.R. 755, 763 (Bankr. S.D. Fla. 2013).

In the First Motion to Vacate, Johnson asserts that the Trust Deed was forged in 2024 and therefore the Court made a mistake of law applying the Florida Land Trust Act in its Order dismissing the first bankruptcy case. The Trust Deed was not an issue in the dismissal proceedings and was not submitted to the Court. Indeed, Homemakers agreed to present their case and rely on the loan, trust, and assignment documents Homemakers presented to the Court. As a result, Homemakers acknowledged the existence of the Land Trust. Johnson made the decision to not participate in the proceedings. It is impossible for the Court to erroneously apply the law to the facts of a case, if the alleged facts were never before the Court.

In addition, Johnson's forgery claims are subject to significant dispute which is discussed further below.

**Rule 60(d)(3) does not Support Vacating the Dismissal Order**

In the First Motion to Vacate, Johnsons claims that a fraud on the Court occurred because he disputes the existence of the Land Trust. In the Eleventh Circuit to commit a fraud on the Court, the conduct must "embrace only that species of fraud perpetrated by officers of the court do that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." Travelers Indem. Co. v. Gorem, 761 F.2d 1549, 1551 (11th Cir. 1985). The conduct must be egregious, be "perpetrated against the judicial machinery,' "defile the Court itself" and must involve "an unconscionable plan or scheme." Mills v. Commissioner, Alabama Dept' of Corrections, 102 F. 4th 1235, 1240 (11th Cir. 2024).. Fraud on the Court is

5

limited to the most egregious forms of subversion of the legal process…those we cannot necessarily expect to be exposed to by the normal adversary process." Travelers, 761 F.2d at 1552 (citations omitted)(emphasis added); see also Debose v. USF Board of Trustees, 844 Fed. Appx. 99, 112 (11th Cir. 2021). Furthermore, labeling a legal error claim while claiming "fraud on the court" is insufficient to establish such a claim. United States v. Bueno-Sierra, 723 Fed. Appx. 850, 855 (11th Cir. 2018). Conduct such as "nondisclosure to the court of facts allegedly pertinent to the matter before it, will not ordinarily rise to the level of fraud on the court." Rozier v. Ford Motor Co., 573 F.2d 1332, 1338 (5th Cir. 1978); Popiel v. Commonwealth Land Title Insurance Company, 2026 WL 321439 *4 (MDGA 2026)(even perjury and fabricated evidences does not qualify as fraud on the Court).

In the First Motion to Vacate, Johnson asserts the Assignment of Johnson's sole member interest in Homemakers in January 2024 was invalid. Johnson alleges Trust Deed for the condominiums owned by Homemakers was not recorded properly and the Land Trust was not formed because the Trust Deed was "forged." All of these allegations occurred more than a year prior to the filing of this bankruptcy case and were not pursued during the first dismissal proceedings. Indeed, Homemakers relied on the existence of these documents in it arguments to the Court and acknowledged the existence of the Land Trust and the Assignment during the proceedings.

Johnson's claim of a forgery leaves out some key facts. In the affidavit attached as Exhibit "B", the notary, Janelle Morea, affirms she was an employee of one of Johnson's entities and took the direction solely of Johnson, Frank Amodeo, and Martin Flynn with respect to notarizing documents. She also confirms that Alison Pitkanen never instructed her to falsify a notary seal and that she did not take direction from Ms. Pitkanen on any matter including notarizing signatures.

Further, she confirms that any signature that she notarized for Johnson was actually his signature. These documents included the transaction documents involving Respondents. In other words, Johnson is claiming that the notary seal that **he** was responsible for and presented to the Respondents is forged or fraudulent. Furthermore, nowhere does Johnson claim he did not sign a deed, that he was tricked into signing a deed, or that he did not intend to sign a deed for the condominiums in favor of Land Trust.[4] He only argues that he has a copy of a deed without an exhibit attached that contained the property descriptions. It is not surprising that Johnson would have multiple copies of the deed in different states of signature, because he was responsible for the notarization of the document.

Johnson also claims the witnesses are false attestations. But the witnesses are Anthony Amodeo and Gabrielle Amodeo, who are Frank Amodeo's niece and nephew.

Finally, the DocuSign identification number on the recorded deed, matches Johnson's identification number. See Exhibit "C". As a result, all of the evidence supports that Johnson executed the recorded deed, had Amodeo's relatives witness it, and then he provided it to Respondents..[5]

In summary, Homemakers agreed the Land Trust was established. Homemakers also agreed that the Assignment was made to the Land Trust and the parties agreed to the key facts of the case. Johnson was responsible for having the deed notarized. Johnson does not dispute that Homemakers agreed to assign its interests in the condominiums to the Land Trust. There is no

---

[4] This is no small matter. Johnson cites to sec. 831.01 of the Florida statutes defining the crime of forgery. That statute "requires the intent to injure of defraud another person." Johnson was a willing participant in signing the deed and he does not state any injury.

[5] This is not Mr. Johnson's only claim of forgery. In the initial response to the Motion to Dismiss, Homemakers claimed Johnson did not sign the Assignment. Then during the proceeding they agreed that the Court should rely on the Assignment. In his civil theft letter, Johnson asserted he signed the Assignment in what could be described as some sort of duress.

7

6456547.v1

claim that any evidence Homemakers agreed to be submitted to the Court was fabricated and the Trust Deed was not even an issue in the case. There is no evidence of any plan or scheme by the Respondents to commit any fraud on the Court, there certainly was not any conduct that prevented the Court from adjudicating the matter (like bribing of witnesses, etc.). As a result, Johnson cannot meet his burden to vacate the Order dismissing the case under Rule 60(d)(3).

**Rule 60(b)(3) Does not Support Vacating the Dismissal Order**

To vacate an Order under Rule 60(b)(3), in the Eleventh Circuit, the movant must meet tow requirements. First, the movant must prove by clear and convincing evidence that the adverse party obtained the verdict through fraud, misrepresentations, or other misconduct. Waddell v. Hendry County Sheriff's Office, 392 F.3d 1300, 1309 (11th Cir. 2003). Second, the moving party must also demonstrate that the conduct prevented them from fully presenting the case. Id. The rule is aimed at judgments that are "unfairly obtained, not at those which are factually incorrect." Rozier, 573 F.2d at 1339. Therefore, it is not enough to show that the opposing party behaved badly or that the judgment may have been wrong on the merits; the movant must show a causal link between the misconduct and an actual prevention the movant's ability to present their case. Frederic v. Kirby Tankships, Inc., 205 F.3d 1277, 1288 (11th Cir. 2000).

In the Second Motion to Vacate, Johnson asserts that Respondents misrepresented the effect of the Assignment of Johnson's interests. Context is necessary. Well after the dismissal of this case, parties related to the Respondents received a civil theft letter from Johnson regarding the assignment of the interest in Homemakers. A key issue for civil theft is the subjective intent of the defendant. In response to the civil theft letter the parties stated that they lacked the intent for civil theft because if Johnson's loans were paid in full or if they reached a resolution they would have returned the membership interests to Johnson. Nowhere does the response does it state that Land

8

6456547.v1

Trust did not exist, that Johnson's Assignment did not result in a total assignment the membership interest in Homemakers, that those membership interests were collateral for the loans, or that there was a secret undocumented trust where Johnson was a beneficiary.[6]

The statement in the civil theft letter response does not change the legal standing of the parties under the Land Trust or the Assignment. In review, the assignment of Johnson's interests to the Land Trust occurred several month after the Tiered Loan, the Loan Agreement and the Land Trust Agreement were entered into. The Tiered Loan fell into default and Johnson entered into the assignment for a forbearance. The Land Trust was never revised to include Johnson as a beneficiary and there is no evidence of such an agreement. Thus, Johnson had no right to any of the *res* in the Land Trust. In addition, the Land Trust was never amended or revised to state that the assignment of Johnson's interests was collateral for the loans. Not only do the Motions not dispute these facts and these were the facts reflected in the documents that Homemakers submitted to the Court when entering the Order dismissing this case.

Two things can be true at once, the parties entered into a deal giving a party certain legal rights, but one party could always have the subjective intent to agree to waive those rights later if they received what they wanted from the deal. Here, what Dixon wanted was payment of the full debt. Even if the statements are contrary, taking an inconsistent position in a subsequent lawsuit does not result in the granting of a Rule 60(b)(3) motion. Frederick v. Kirby Tankships, Inc., 205 F.3d 1277, 1298 (11th Cir. 2000).

As a result, of the above, Johnson does not meet the first requirement established by the 11th Circuit under Rule 60(b)(3).

---

[6] Counsel acknowledges that the language in the civil theft letter response should have been more precise. But, that does not change the parties legal rights.

6456547.v1

As stated above, the Eleventh Circuit's second requirement to vacate a judgment under Rule 60(b)(3) is that Johnson must show that the conduct of Respondents prevented Homemakers (or Johnson) from "fully presenting their case." Conduct relating to the inability to fully present a case often involves purposefully not providing information during discovery. See Brown v. Walmart Stores East, LP, 2017 WL 3608186 *3 (GAND 2017)(citations omitted). A party cannot invoke Rule 60(b)(3) when its own tactical decision — rather than the opposing party's misconduct — were responsible for the failure to fully present the case. Waddell, 329 F.3d at 1310. Furthermore, failure of the movant to assiduously investigate a claim or cross examine a witness results in the denial of a Rule 60(b)(3) motion. Armstrong v. The Cadle Co., 239 F.R.D. 688, 695 (FLSB 2007) (citing Gov't Fin. Servs. One LTD Partnership v. Payton Place, Inc., 62 F.3d 767, 773 (5th Cir. 1999)).

Here, Homemakers made the tactical decision to not conduct discovery or an investigation, to not conduct an evidentiary hearing to cross-examine Dixon, and to rely solely on the documents that Homemakers presented to the Court as part of its response. Under clear legal authority, Johnson should not be granted relief based on his own and Homemakers their tactical decisions.

Based on the foregoing, the First and Second Motion to Vacate should be denied.

DATED: June 2, 2026.

/s/ James A. Timko
JAMES A. TIMKO, ESQ.
Florida Bar No. 0088858
**DEAN, MEAD, EGERTON, BLOODWORTH, CAPOUANO & BOZARTH, P.A.**
420 S. Orange Avenue, Suite 700
Orlando, Florida 32801
Telephone:    407-841-1200
Facsimile :    407-423-1831
Email:        jtimko@deanmead.com
***Counsel for PEDIXON AND ZPD***

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 2, 2026, I electronically filed this Objection with the Clerk of Court through CM/ECF system which will send a Notice of Electronic Filing to all counsel of record.

/s/ *James A. Timko*
JAMES A. TIMKO, ESQ.

11

6456547.v1

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.:6:25-bk-05570-GER

IN RE:

HOMEMAKERS REAL ESTATE, LLC,

Debtor.

FEBRUARY 3, 2026

VOLUME I

TRANSCRIPT OF TRIAL PROCEEDING

BEFORE THE HONORABLE GRACE E. ROBSON
UNITED STATES BANKRUPTCY JUDGE

GEORGE C. YOUNG COURTHOUSE
400 WEST WASHINGTON STREET
ORLANDO, FLORIDA

A P P E A R A N C E S:

JAMES A. TIMKO, ESQUIRE
Dean, Mead, Egerton, Bloodworth,
Capouano & Bozarth, P.A.
420 South Orange Avenue
Suite 700
Orlando, Florida
        Appearing on behalf of Debtor Homemakers
        Real Estate, LLC

LAWRENCE M. KOSTO, ESQUIRE
Kosto & Rotella
1517 East Robinson Street
Orlando, Florida
        Appearing on behalf of CTO Holdings, Inc.,
        IMQA Investments Incorporated

        Proceedings recorded by electronic sound recording
        Transcript Provided by ACCREDITED COURT REPORTERS
                acreporters@embarqmail.com
                    (407) 443-9289


EXHIBIT
A

enough money to pay you back, they pay you back?

A    That's my expectation.

Q    Okay.  So, so is it fair to say that the loan -- the repayment is contingent on Homemakers ever having money to pay you?

A    I suppose that be fair.

Q    And we mentioned the only assets of Homemakers before and you said they were townhomes and condos.

Are all of those townhomes and condos currently subject to foreclosure actions?

A    Yes.

Q    Now, at one time you did, though, own a hundred percent of Homemakers, correct?

A    Yes.

Q    And this Court ruled in the first bankruptcy case that the legal and beneficial interests in Homemakers are owned by a land trust, correct?

A    Correct.

Q    And you attended the hearings in the first bankruptcy case remotely, correct?

A    Correct.

Q    And you were aware of the motion to dismiss when it was pending, correct?

A    The motion to dismiss?

Q    The motion -- I'm sorry.  The motion -- a

126

motion to dismiss the involun -- the first bankruptcy case was filed, correct?

A    Yes.

Q    And you were aware of the motion to dismiss in the --

A    Aware of that, yes.

Q    -- first bankruptcy case while it was pending, correct?

A    I'm not sure of the timing, but, yeah, sounds -- sounds reasonable.

Q    Can you please turn to Number 10?  Is this the order dismissing the first bankruptcy case?

A    Yes.

MR. TIMKO: Your Honor, I'd like to enter this into evidence.

THE COURT: Okay.  Any objection?

MR. KOSTO: No objection, Your Honor.

THE COURT: Okay.  Admitted.

BY MR. TIMKO:

Q    And if you turn to Page 2, it says Movants and Debtor agree that prior to the petition date Mr. Johnson assigned all of his right, title, and interest in a hundred percent of Debtor's membership interest to the land trust, correct?

A    That's what it says, yes.

## DECLARATION OF JANELLE MOREA

I, Janelle Morea, under penalty of perjury, declare that I have personal knowledge of all statements contained herein and state as follows:

1. **Employment**: From approximately September 2020 through April 2024, I was a full-time employee of Tiered Capital, Inc. and its subsidiary, Sherwood Construction, Inc., serving as an Executive Assistant, certified paralegal, and Office Manager. I was never employed by Alison Pitkanen or her law firm.

2. **Notary Certification and Insurance**: My Florida Notary Public certification and the required surety bond and insurance were paid for and maintained by my employer, Sherwood Construction, Inc. My commission remained valid and in good standing from January 2022 until its expiration on January 5, 2025.

3. **Professional Record**: In my years of service as a Notary Public, I have never been the subject of any complaint, inquiry, or disciplinary action regarding a notarial act. To the best of my knowledge, I have always performed my duties in strict compliance with the notarial laws of the State of Florida.

4. **Authorization and Reporting**: Every document I notarized related to the numerous loans made and/or guaranteed to or for the benefit of Tiered Capital, Inc., Sherwood Construction, Inc., Martin C. Flynn, Jr. or Horton Johnson, was done with the express permission and under the direction of Martin C. Flynn, Jr. or Horton Johnson. Any signature I notarized for Martin C. Flynn, Jr. was actually his signature. Any signature I notarized for Horton Johnson was actually his signature.

   During my employment, I reported exclusively to Martin C. Flynn, Jr., Horton Johnson, or the CFO, Ken Jones.

5. **Direction Regarding Amodeo**: I was specifically directed by Martin C. Flynn, Jr. to report to and take daily direction from Frank Amodeo regarding business affairs.

6. **Interactions with Counsel**: At no time did Alison Pitkanen ever ask me to falsify a notary seal, nor did she ever direct me to perform any "false attestation" or improper notarial act. I did not take directions from Ms. Pitkanen



EXHIBIT

B

regarding notarizing signatures or any other matter related to my job. I would not have falsely notarized a document at her request, but no such request was ever made. Alison Pitkanen was the Closing Attorney and did not have the authority to direct my actions as an employee of the borrower. After I notarized documents, they were provided to Ms. Pitkanen at the direction of my employer. In my experience, Ms. Pitkanen never asked me to do anything inappropriate. To my knowledge, Ms. Pitkanen never took an action that was unethical.

**I declare under penalty of perjury under the laws of the State of Florida that the foregoing is true and correct.**

**Executed on: February 8, 2026**

JANELLE MOREA

**DocuSign**

## Certificate Of Completion

Envelope Id: 9078288BFE204A15A658110FB6D3929D                                           Status: Completed
Subject: Complete with DocuSign: Assignment Beneficial Interest.Homemakers.pdf, GUARANTY.Homemakers.pdf,...
Source Envelope:
Document Pages: 11                          Signatures: 4                  Envelope Originator:
Certificate Pages: 5                        Initials: 0                    Alison Pitkanen
AutoNav: Enabled                                                          13514 Lake Mary Jane Rd
EnvelopeId Stamping: Enabled                                              nil
Time Zone: (UTC-08:00) Pacific Time (US & Canada)                         Orlando, FL  32832
                                                                          alisonplaw@gmail.com
                                                                          IP Address: 162.230.108.92

### Record Tracking

Status: Original                     Holder: Alison Pitkanen              Location: DocuSign
        9/13/2023 10:23:34 AM                alisonplaw@gmail.com

| Signer Events | Signature | Timestamp |
|---|---|---|
| Horton S. Johnson<br>wjohnsonbbf@gmail.com<br>MGR<br>Security Level: Email, Account Authentication (None) | DocuSigned by:<br>*Horton S. Johnson*<br>ED9DF901DDEE48B...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 72.238.64.53 | Sent: 9/13/2023 10:34:34 AM<br>Viewed: 9/13/2023 10:50:44 AM<br>Signed: 9/13/2023 10:52:42 AM |

Electronic Record and Signature Disclosure:
   Accepted: 9/13/2023 10:50:44 AM
   ID: 48040a3a-7398-431c-8b28-11e194a6ab09

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|
| alison pitkanen<br>alisonpitkanen@gmail.com<br>Manager<br>Alison Pitkanen Law Firm LLC<br>Security Level: Email, Account Authentication (None) | **COPIED** | Sent: 9/13/2023 10:34:34 AM |

Electronic Record and Signature Disclosure:
   Accepted: 8/1/2023 11:28:04 AM
   ID: 5809624e-9b86-40f5-99c9-60014a00251e

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 9/13/2023 10:34:34 AM |
| Certified Delivered | Security Checked | 9/13/2023 10:50:44 AM |

EXHIBIT

**C**

tabbies

**Envelope Summary Events**          **Status**              **Timestamps**

Signing Complete                     Security Checked        9/13/2023 10:52:42 AM
Completed                            Security Checked        9/13/2023 10:52:42 AM

**Payment Events**                   **Status**              **Timestamps**

**Electronic Record and Signature Disclosure**

Electronic Record and Signature Disclosure created on: 8/12/2022 12:34:00 PM
Parties agreed to: Horton S. Johnson, alison pitkanen

**ELECTRONIC RECORD AND SIGNATURE DISCLOSURE**

From time to time, Alison Pitkanen (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

**Getting paper copies**

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

**Withdrawing your consent**

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

**Consequences of changing your mind**

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

**All notices and disclosures will be sent to you electronically**

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact Alison Pitkanen:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: alisonplaw@gmail.com

**To advise Alison Pitkanen of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at alisonplaw@gmail.com and in the body of such request you must state: your previous email address, your new email address.  We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from Alison Pitkanen**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to alisonplaw@gmail.com and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Alison Pitkanen**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to alisonplaw@gmail.com and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent.. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

**Required hardware and software**

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

**Acknowledging your access and consent to receive and sign documents electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

> You can access and read this Electronic Record and Signature Disclosure; and
> You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
> Until or unless you notify Alison Pitkanen as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by Alison Pitkanen during the course of your relationship with Alison Pitkanen.